**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**
**WESTERN DIVISION**

| | | |
|---|---|---|
| | ) | |
| EQUAL EMPLOYMENT OPPORTUNITY | ) | |
| COMMISSION, | ) | |
| | ) | |
| Plaintiff, | ) | **Case No.:  08-CV-706(A)(M)** |
| | ) | |
| v. | ) | **Pending in the United States District** |
| | ) | **Court for the Western District of** |
| STERLING JEWELERS INC., | ) | **New York** |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF NON-PARTY TERRY BURMAN'S MOTION TO QUASH PLAINTIFF EEOC'S SUBPOENA FOR  DEPOSITION

SEYFARTH SHAW LLP
Gerald L. Maatman, Jr.
Daniel B. Klein
2 Seaport Lane, Suite 300
Boston, MA  02210-2028
Telephone:  (617) 946-4800
Facsimile:  (617) 946-4801

620 Eighth Avenue, 32nd Floor
New York, New York  10018-1405
Telephone:  (212) 218-5500
Facsimile:  (212) 218-5526

*Attorneys for Terry Burman*

**TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................... ii

INTRODUCTION ........................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................... 2

ARGUMENT .................................................................................................................. 4

CONCLUSION................................................................................................................ 9

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Accusoft Corp. v. Quest Diagnostics, Inc.*,
No. 12-40007-FDS, 2012 U.S. Dist. LEXIS 54216 (D. Mass. Apr. 18, 2012) ...................5, 9

*Cusumano v. Microsoft Corp.*,
162 F.3d 708 (1st Cir. 1998) .....................................................................................................4

*Harris v. Computer Assocs. Int'l, Inc.*,
204 F.R.D. 44 (E.D.N.Y. 2001) ................................................................................................6

*Haworth, Inc. v. Herman Miller, Inc.*,
998 F.2d 975 (Fed. Cir. 1993) ...................................................................................................5

*Tucker v. Am. Int'l Group, Inc.*,
281 F.R.D. 85 (D. Conn. 2012) ..................................................................................................5

*Weinman v. Cable*,
427 F.3d 49 (1st Cir. 2005) ........................................................................................................5

*Williams v. Franklin County Mun. Court*,
No. 2:10-cv-1155, 2011 U.S. Dist. LEXIS 147838 (S.D. Ohio Dec. 22, 2011).......................6

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26 ................................................................................................................1, 2

Fed. R. Civ. P. 26(b)(2)(C) ......................................................................................................4

Fed. R. Civ. P. 30(b)(6)............................................................................................................3

Fed. R. Civ. P. 45 .............................................................................................................1, 4, 5

Fed. R. Civ. P. 45(c)(1)............................................................................................................5

Fed. R. Civ. P. 45(c)(3)(A)(iv) ................................................................................................5

## INTRODUCTION

In a pending action before the United States District Court for the Western District of New York, C.A. No. 08-CV-0706A(M), the Equal Employment Opportunity Commission ("EEOC") has issued a subpoena for the deposition of Terry Burman, a former Chief Executive Officer ("CEO") of both Defendant Sterling Jewelers Inc. ("Defendant" or "Sterling") and its parent corporation, Signet Group, plc ("Signet").  (Ex. A.)[1]  Mr. Burman has not been CEO of Sterling since 2006, retired as CEO of Signet on January 29, 2011, is not a party to this litigation, and had no involvement whatsoever in the personnel decisions at issue.  Mr. Burman was not even identified by either party in their Rule 26 initial disclosures as an individual with potentially-discoverable knowledge.

The EEOC's lawsuit asserts gender discrimination by Sterling in making pay and promotion decisions for retail sales employees in its stores. The EEOC does not allege that Mr. Burman was a decision-maker in any of the pay or promotion decisions at issue in this litigation. In his former position as CEO of Sterling, and later Signet, Mr. Burman was far removed from the matters relevant to this case.  And any relevant knowledge that he may have would be duplicative of the information possessed by other employees, including the current CEO of Sterling, Mark Light.  The EEOC deposed Mr. Light on March 20, 2013, and has failed to articulate any justifiable basis to also depose Mr. Burman.  There is no reason to needlessly burden Mr. Burman with a deposition where what little relevant knowledge he possesses – if any – is at best duplicative and not first-hand.  Accordingly, this Court should exercise its discretion pursuant to Fed. R. Civ. P. 26 and 45 and issue an order quashing the EEOC's subpoena and barring it from taking Mr. Burman's deposition.

---

[1] Submitted herewith is an Appendix Of Exhibits In Support Of Non-Party Terry Burman's Motion To Quash Plaintiff EEOC's Subpoena For Deposition.  Exhibit references in this Memorandum are to exhibits contained in the Appendix.

## FACTUAL AND PROCEDURAL BACKGROUND

Sterling is the wholly-owned subsidiary of Signet.  (Ex. B, Burman Decl. ¶ 2.)  Terry Burman was the Chairman of the Board and CEO of Sterling from 1995 until 2006.  (*Id*.)  He was appointed as CEO of Signet in 2001, and held the dual positions of Chairman and CEO of Sterling and CEO of Signet from 2001 until 2006.  (*Id*.)  In January 2006, he was replaced as Sterling CEO by Sterling COO Mark Light, but Mr. Burman continued to hold the positions of Chairman of Sterling and CEO of Signet until he retired in January 2011.  (*Id*. ¶ 3.)

In its Complaint, the EEOC alleges that Sterling engaged in a pattern or practice of discriminating against female retail sales employees in pay and promotions.  (Ex. C, Compl. ¶¶ 7-8, WDNY Dkt. No. 1.)  The EEOC has focused its pay claims on the pay decisions affecting retail sales employees up to the level of Store Manager, and it has focused its promotion claims on decisions regarding promotions into the positions of Store Manager ("SM"), Assistant Store Manager ("ASM"), and District Manager ("DM").  Upon information and belief, the EEOC has not challenged promotions into positions above the DM level.  The Complaint contains no allegations of sexual harassment nor any allegation that Sterling has a corporate culture imbued with gender bias.

Mr. Burman is not a party to this litigation, and as indicated above, is no longer employed by the Defendant or its parent.  No party identified him in its Rule 26 disclosures or in any answers to interrogatories.  (Ex. D, Maatman Decl. ¶ 7.)  In his positions as CEO of Sterling and Signet, Mr. Burman did not have any direct responsibility for oversight of human resources ("HR") activities, and was not involved whatsoever in making any of the pay or promotion decisions at issue in this action (*i.e.*, pay decisions affecting retail sales employees in the positions of SM or below, and decisions regarding promotions into the positions of DM or below).  (Ex. B, Burman Decl. ¶¶ 5, 7.)  While Mr. Burman was CEO of Sterling and Signet,

Sterling's HR department reported to senior executives other than Mr. Burman.  (Ex. B, Burman Decl. ¶ 5.)

Mr. Burman was not aware of allegations of pay or promotion discrepancies at Sterling until this litigation was filed.  Since then, his knowledge of the litigation is limited to publicly available information and what he learned in occasional updates provided by Mr. Light.  (*Id.* ¶ 6.)  Moreover, he has received no such updates since he retired from Signet.  (*Id.* ¶ 6.)  The EEOC does not contend that Mr. Burman was a decision-maker with respect to any of the pay or promotion decisions at issue in this case, nor is there any evidence that Mr. Burman was involved with or consulted about those pay or promotion decisions.  As CEO, Mr. Burman only approved promotions as low as Vice President.  (*Id.* ¶ 10.)  At most, Mr. Burman reviewed summary pay information for the DM level and below as part of general budget reviews that he conducted as Sterling CEO, until 2006.  (*Id.* ¶ 7.)  To the best of his recollection, this information was presented to him in the form of a single line-item for each position-type – a solitary data point that aggregated the salaries of as many as 10,000 people for a particular position, and was not broken down by gender or individual.  (*Id.*)  The information was provided to Mr. Burman by Mr. Light – who already has been deposed – while Mr. Light was Sterling COO.  (*Id.*)  Mr. Burman stopped reviewing these general summaries as part of the budget-review process when he ceased working as Sterling CEO in January 2006.  (*Id.*)

In addition to Mr. Light's deposition, the EEOC conducted a Rule 30(b)(6) deposition of multiple Sterling designees covering an array of subjects over five dates, including the Senior Vice President of Human Resources, Steven Becker, and the Senior Vice President of Field Operations, Tryna Kochanek.  (Ex. D, Maatman Decl. ¶ 8.)  Indeed, the individuals with knowledge regarding any applicable pay or promotions policies are persons within Sterling's HR department.  In addition to Mr. Becker's deposition, the EEOC has already taken the depositions of three other key HR department representatives: Michael Lynch, the Vice President of

Employee Relations; Maryellen Mennett, the Director of Field Human Resources; and Tom Parks, a Regional Human Resources Specialist.  Further, the EEOC has deposed at least one of Defendant's Division Vice President and two Vice Presidents of Regional Operations, each in his individual capacity.  (*Id.*)

The persons most knowledgeable about the pay and promotions decisions at issue – decisions that the EEOC alleges are discretionary (Ex. C, Compl. ¶¶ 7(a), 8(a)) – are the managers in the field who made those decisions.  The EEOC has already taken the depositions of one DM, and noticed the deposition of another former DM.  (Ex. D, Maatman Decl. ¶ 8.)

Further, on March 20, 2013, the EEOC took the deposition of Mark Light, the current CEO of Sterling.  Mr. Light has held that position continuously since January 1, 2006.  Mr. Light was not a decision-maker with respect to the pay or promotion decisions being challenged in this case, nor does he have any significant knowledge of those decisions.  (Ex. D, Maatman Decl. ¶ 9.)  Mr. Burman was even farther removed from those decisions than Mr. Light, and there is no reason to believe that he had any information relevant to those decisions that Mr. Light did not also possess.

## **ARGUMENT**

"The discovery rules apply to subpoenas issued under Fed. R. Civ. P. 45."  *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 714 (1st Cir. 1998).  Rule 26(b)(2)(C) expressly provides as follows:

> (C) *When Required.*  On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
>> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>>
>> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

> (iii) the burden or expense of the proposed discovery outweighs its
> likely benefit, considering the needs of the case, the amount in
> controversy, the parties' resources, the importance of the issues at
> stake in the action, and the importance of the discovery in
> resolving the issues.

Rule 45 provides that a party issuing a subpoena must take reasonable steps to avoid imposing undue burden or expense, and requires a court to quash or modify a subpoena that subjects a person to undue burden. *See* Fed. R. Civ. P. 45(c)(1), (c)(3)(A)(iv). Whether a burden on a proposed deponent is undue requires weighing the likely relevance of the requested information against the burden of producing the information. *See Weinman v. Cable*, 427 F.3d 49, 53 (1st Cir. 2005) (noting the need to balance benefit versus burden on a non-party even when relevant information is sought). A court must limit the frequency or extent of discovery otherwise allowed if the discovery sought is unreasonably cumulative or duplicative or can be obtained from some other source that is more convenient or if the burden or expense of the proposed discovery outweighs its likely benefit. *See Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978 (Fed. Cir. 1993) ("[D]istrict court could properly require [defendant] to seek discovery from his party opponent before burdening the nonparty."); *Accusoft Corp. v. Quest Diagnostics, Inc.*, No. 12-40007-FDS, 2012 U.S. Dist. LEXIS 54216, at *29-30 (D. Mass. Apr. 18, 2012) (granting protective order because information sought was cumulative and could be obtained from a party).

The "fact [that the deponent is a non-party] is entitled to special weight in evaluating the balance of competing needs." *Weinman*, 427 F.3d at 53; *Tucker v. Am. Int'l Group, Inc.*, 281 F.R.D. 85, 92 (D. Conn. 2012) (noting that, in performing such balance, "the fact that discovery is being sought *from a third or non-party*, . . . weighs against permitting discovery"). If the information sought of a proposed non-party deponent is tangential to the resolution of the issues involved in the case, "the burden of subjecting the deponent to even a short deposition outweighs

its likely benefit." *Williams v. Franklin County Mun. Court*, No. 2:10-cv-1155, 2011 U.S. Dist. LEXIS 147838, at *7 (S.D. Ohio Dec. 22, 2011).

Accordingly, the Court should quash the subpoena for the deposition of Mr. Burman. Based upon his declaration, Mr. Burman, who has been retired for more than two years, was far removed from any relevant information regarding the issues in this litigation. Sterling HR personnel have far more knowledge of any relevant pay or promotion policies, and the EEOC has already taken the depositions of four of the executives in Sterling's HR department. Similarly, Mr. Burman was not involved with any of the allegedly unlawful discretionary retail-level pay and promotion decisions about which the EEOC complains. Indeed, the deposition testimony of Sterling's current CEO, Mr. Light, demonstrates that even he has no knowledge of those alleged pay and promotion policies and decisions, and Mr. Burman was farther removed from those decisions than Mr. Light. Thus, even assuming Mr. Burman has some relevant information, that information is cumulative and has likely already been obtained in depositions of Sterling and its employees. *See Harris v. Computer Assocs. Int'l, Inc.,* 204 F.R.D. 44, 46 (E.D.N.Y. 2001) (recognizing that "[d]epositions of high level corporate executives may be duplicative, cumulative and burdensome where the person sought to be deposed has no personal knowledge of the events in dispute").

When counsel for Sterling inquired of the EEOC for the reason for its belated request to take Mr. Burman's deposition, the EEOC contended that the deposition of Burman is justified because he allegedly has knowledge of the following:

> (1) he routinely received Sterling communications regarding field operations, including on issues at the heart of this case, employee compensation and promotions; (2) he sent multiple joint communications with Mark Light to Sterling employees; (3) he routinely attended Sterling District Manager meetings and the annual Orlando managers' meetings; and (4) he was routinely updated by Mark Light about Sterling operations in the field. Additionally, Mark Light testified at his deposition that the distinction between operations and officials of Signet and Sterling was "muddy."

(Ex. D, Maatman Decl. ¶ 6 & Ex. 3.)

These assertions are, at best, half-truths in which the EEOC conveniently neglects pertinent information, thereby giving a misleading impression:

1)     Mr. Burman did receive Sterling communications regarding field operations, including on the issue of compensation levels for DM's and lower.  But what the EEOC fails to mention is that these took the form of high-level summaries that were not specific to particular individuals or genders.  For example, Mr. Burman received aggregated budget reports that contained line-items, which reported the consolidated compensation information for  all employees in a particular job classification – sometimes as many as 10,000 employees for one line-item.  (Burman Decl. ¶ 7.)  These reports were not broken down by individual or gender. (*Id.*)  They were provided to Mr. Burman by Mr. Light, when Mr. Light served under Mr. Burman as Sterling COO.  (*Id.*)  Thus, Mr. Burman does not have anything new to offer that other Sterling employee witnesses, such as Mr. Light, could not provide.

2)     Mr. Burman did send certain communications with Mark Light to Sterling employees.  They consisted of company newsletters; letters thanking employees for their effort; a few announcements about company-wide benefit plans such as health insurance, stock options for all employees at the DM level, and 401K plans for all employees.  (*Id*. at 8)  None of these documents discussed pay on promotion decision for employees at the DM level or below (*id*.), and there is no reason why the EEOC should be permitted to waste everyone's time to depose Mr. Burman concerning these irrelevant documents.

3)     Mr. Burman did attend some Sterling District Manager meetings to deliver an introductory address; however, he rarely, if ever, stayed past the first few hours of introductions, and was not involved in any meetings or discussions about compensation or promotion decisions at the DM level or lower.  (*Id*. at ¶ 9.)  Mr. Burman also did attend the annual Orlando managers' meetings; however, any break-out sessions he attended were training sessions for SM's and

repair-shop managers, regarding subjects such as customer service, time management, or product knowledge.  (*Id*.)  Some training sessions involved guest motivational speakers, awards presentations, or presentations about such other matters such as holiday advertising or the company's charity partnerships.  (*Id*.)  Mr. Burman does not recall ever attending a training session that involved discussions about compensation or promotion decisions at the DM level or lower.  (*Id*.)

       4)     To the extent Mr. Burman was "updated by Mark Light about Sterling operations in the field," it was regarding "big picture" issues, such as budgets, or store remodels and closings.  (*Id*. at ¶ 10.)  Mr. Light did not brief Mr. Burman on matters related to specific promotion or compensation decisions for individuals below the DM level.  As far as promotions at the DM level, I was only informed of those after the promotion decision had been made and the individual being promoted had been notified.  (*Id*. at ¶ 10.)  As CEO, Mr. Burman only approved promotions as low as Vice President; after he ceased being CEO of Sterling in 2006, he did not even approve promotions at the Vice President level.  (*Id*. at ¶ 10.)

Thus, the EEOC has not demonstrated that such communications or meetings bear on any allegedly discriminatory pay and promotion decisions, and it has not otherwise explained how unidentified communications or "managers' meetings" might be relevant to this case.  The EEOC has not identified the documents referred to in item number (1), nor has it explained why the correspondence is relevant or why others, besides Mr. Burman, cannot testify about them.  Clearly, the EEOC had an opportunity to question Mr. Light about items (2) and (4).  Furthermore, regarding item (3), certainly, Mr. Light and others who attended the managers' meetings can testify as to what occurred there.  And the EEOC provides no indication at all as to why any "muddy" distinction between operations and officials of Signet and Sterling has any relevance to the litigation.  Mr. Light himself was in the best position to testify as to what he meant by using the word "muddy" to describe the alleged distinction.

Finally, the EEOC's arguments miss the point.  The issue is not whether Mr. Burman has knowledge of some information that might possibly be relevant for discovery purposes.  Because Mr. Burman is a non-party, the EEOC has an obligation to first attempt to obtain that information from a more convenient source – here, the Defendant or its current employees.  The EEOC is not entitled to depose Mr. Burman when any relevant information that he may possess is cumulative of discovery provided by the Defendant.  *Accusoft*, 2012 U.S. Dist. LEXIS 54216, at *29-30.  Accordingly, this Court should grant Mr. Burman's motion to quash the EEOC's subpoena for his deposition.

## **CONCLUSION**

Based upon the foregoing, non-party proposed deponent Terry Burman respectfully requests this Court to grant his motion to quash the EEOC's subpoena for his deposition.

Dated:  May 3, 2013

Respectfully submitted,

SEYFARTH SHAW LLP

By:  */s/ Daniel B. Klein*

Gerald L. Maatman, Jr.*
gmaatman@seyfarth.com
Daniel B. Klein
dklein@seyfarth.com
Seyfarth Shaw LLP
2 Seaport Lane, Suite 300
Boston, MA  02210-2028
Telephone:  (617) 946-4800
Facsimile:  (617) 946-4801

620 Eighth Avenue, 32nd Floor
New York, New York  10018-1405
Telephone:  (212) 218-5500
Facsimile:  (212) 218-5526

*Attorneys for Terry Burman*

*Motion for admission *pro hac vice* to be filed

9

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS
## WESTERN DIVISION

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

      Plaintiff,

v.

STERLING JEWELERS INC.,

      Defendant.

)
)
)
)
)
)
)
)
)
)
)
)

**Case No.:  08-CV-706(A)(M)**

**Pending in the United States District
Court for the Western District of
New York**

## CERTIFICATE OF SERVICE

I hereby certify that, on May 3, 2013, I served copies of the Memorandum Of Law In

Support Of Non-Party Terry Burman's Motion To Quash Plaintiff EEOC's Subpoena For

Deposition via email and U.S. First Class Mail, postage prepaid, to the following:

> Jeffrey Burstein
> Judith Ann Biltekoff
> Elizabeth Grossman
> Nora E. Curtin
> U.S. Equal Employment Opportunity Commission
> New York District Office
> 33 Whitehall Street, 5th Floor
> New York, NY 10004-2112
> Email: jeffrey.burstein@eeoc.gov
> Email: judith.biltekoff@eeoc.gov
> Email: elizabeth.grossman@eeoc.gov
> Email: nora.curtin@eeoc.gov

By:  */s/ Daniel B. Klein*
    Daniel B. Klein
    dklein@seyfarth.com
    Seyfarth Shaw LLP
    2 Seaport Lane, Suite 300
    Boston, MA  02210-2028
    Telephone:  (617) 946-4800
    Facsimile:  (617) 946-4801